**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Kennedy, | No. CV-17-08206-PCT-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| County of Mohave, et al., | |
| Defendants. | |

Decedent Kenneth Jack Kennedy, III was shot and killed during a traffic stop performed by Defendant Deputy Mark Giralde ("Giralde") and former defendant Sergeant Mike Ramirez ("Ramirez"). (Doc. 87 at 7; Doc. 29 at 7) Plaintiff Kimberly Kennedy (the "Plaintiff") filed suit against the County of Mohave and Giralde (together, the "Defendants") alleging causes of action pursuant to 42 U.S.C. § 1983, among other claims. (Doc. 29) The Defendants moved for summary judgement on each of the Plaintiff's claims (the "Motion"). (Doc. 76) The Motion was fully briefed on January 28, 2019. (Docs. 83, 91) The Court's ruling is as follows.

### I. Legal Standard

A court shall grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant is able to do such, the burden then shifts to the non-movant who, "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A judge's function' at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Cable v. City of Phoenix*, 647 F. App'x 780, 781 (9th Cir. 2016).

## II. Background[1]

In October 2016,[2] the decedent was driving a vehicle without operating taillights, and the Plaintiff, the decedent's wife, was a passenger in the vehicle. (Doc. 87 at 7) Giralde and Ramirez began to follow the decedent's vehicle to conduct a traffic stop. (Doc. 87 at 7) The decedent pulled off the road into a driveway and shut off the vehicle. (Doc. 87 at 7) Ramirez was the first officer to engage the decedent. Ramirez followed the decedent into the driveway, parked his patrol vehicle behind the decedent's vehicle, illuminated his red and blue overhead lights, and exited his patrol vehicle. (Doc. 87 at 8) Ramirez then approached the driver's side window of the decedent's vehicle and asked for the decedent's driver's license and car registration information. (Doc. 87 at 8) When

---

[1] Unless otherwise noted, the facts that follow are undisputed.

[2] The Second Amended Complaint states that the decedent was shot and killed sometime between October 28, October 29 or October 31 of 2016. (Doc. 29 at 3, 6) The Defendants' statement of facts states that the incident occurred on October 28, 2016. (Doc. 77 at 1) The Plaintiff's amended statement of facts "admit[s]" that the incident occurred on October 23, 2016. (Doc. 87 at 7)

2

Giralde pulled into the driveway and parked his patrol car, Ramirez was already standing at the driver's side of the decedent's vehicle. (Doc. 87 at 9)

The decedent informed Ramirez that he did not have identification with him. (Doc. 87 at 9) While the decedent and Ramirez were talking, Giralde approached the passenger's side of the stopped vehicle and asked the Plaintiff for identification. (Doc. 87 at 9) The Plaintiff stated that she did not have identification. (Doc. 87 at 9) At that time, Giralde noticed that the ignition to the decedent's vehicle was broken, which raised Giralde's suspicion that the decedent was driving a stolen vehicle. (Doc. 87 at 9) Meanwhile, the decedent and Ramirez were engaging in a conversation about whether the decedent was required to possess a driver's license "just to travel". (Doc. 87 at 9) Based on the content of the conversation between the decedent and Ramirez, Giralde became concerned that the decedent and the Plaintiff were sovereign citizens, also known as constitutionalists. (Doc. 87 at 10) In his deposition, Giralde testified that he had been trained to believe that sovereign citizens had a reputation for responding to police encounters with deadly force. (Doc. 87 at 10)

Ramirez asked the decedent to step out of the vehicle, and the decedent did not follow Ramirez's instruction. (Doc. 87 at 11) Ramirez testified that he told the decedent that the decedent was under arrest for failing to produce identification, and Giralde yelled at the decedent to step out of the vehicle. (Doc. 87 at 11) It is undisputed that the decedent did not follow Ramirez's commands and instead started the vehicle by plunging a screwdriver into the broken ignition. (Doc. 87 at 11–12) Ramirez then instructed the decedent to stop, and Ramirez struck the driver's side window of the decedent's vehicle with a baton. (Doc. 87 at 12)

**III. Disputed Facts**

The subsequent series of events is disputed between the parties.

**Officer's Account:**

After Ramirez struck the driver's side window with a baton, the Defendants state that the decedent shifted the vehicle into reverse, hitting both Ramirez's and Giralde's

3

patrol vehicles. (Doc. 77 at 4, 5) Ramirez stepped back from the vehicle when it reversed, and Giralde moved towards his patrol car and unholstered his weapon. (Doc. 77 at 5) Next, the Defendants state that the decedent shifted his vehicle into drive and accelerated forward, turning the vehicle towards Giralde. (Doc. 77 at 5) The Defendants state that Giralde fired his weapon through the vehicle's windshield while the vehicle was moving forward. (Doc. 77 at 5) At the time Giralde's first shots were fired, Giralde states that he believed the vehicle would hit him, and Ramirez was standing in an open part of the driveway. (Doc. 77 at 5) The Defendants state that the vehicle never reversed a second time, but continued to move forward towards Giralde until it hit a fence. (Doc. 77 at 5)

The vehicle was still running at the time it hit the fence. (Doc. 77 at 5) The Defendants state that Giralde then moved toward the vehicle and fired his weapon through the passenger's side window at the driver. (Doc. 77 at 6) Giralde states that he feared that the vehicle would continue to move towards him or reverse backward into Ramirez; however, Giralde admits that he did not know Ramirez's location at the time the shots were fired through the passenger's side window. (Doc. 77 at 6, 34) In his deposition, Giralde also stated that at the time he fired the fatal shots through the passenger's side window, he did not believe that the vehicle could hit him. (Doc. 77 at 34)

**Plaintiff's Account:**

For the purpose of resolving the Motion, the Court finds that the Plaintiff's testimony is unclear and inconsistent. In the Plaintiff's amended statement of facts,[3] she states that after Ramirez struck the driver's side window with a baton, the decedent put the car into reverse and the decedent's vehicle moved backward, becoming wedged

---

[3] The Court did not provide the Plaintiff with leave to file an amended controverting statement of facts. However, the Defendants did not move to strike the Plaintiff's amended statement of facts. *Dobrowolski v. City of Mesa*, 2010 WL 11515564, at 4 (D. Ariz. Oct. 27, 2010). Accordingly, the Court will consider the amended statement of facts. *Branscomb v. Grp. USA, Inc.*, 2010 WL 11453973, at 1 (D. Ariz. July 2, 2010) (stating "the Ninth Circuit Court of Appeals has stated its strong preference for resolving cases on the merits").

4

between the two patrol vehicles. (Doc. 87 at 2) On Page 3 of the Plaintiff's amended statement of facts, the Plaintiff states that after backing up, the decedent drove his vehicle forward, stopped the vehicle from moving forward, and then put the vehicle in reverse again to move backwards.[4] (Doc. 87 at 3) On Page 13 of the Plaintiff's amended statement of facts, the Plaintiff states that the decedent's vehicle did not accelerate towards Giralde, but proceeded to "make a series of three-point like turns"[5] by backing up, moving forward, and reversing again. (Doc. 87 at 13)

In her deposition, the Plaintiff agreed that the decedent reversed the vehicle, shifted the vehicle into drive and moved the vehicle forward, reversed the vehicle a second time, and then shifted the vehicle into drive a second time before being fatally shot. (Doc. 77 at 67) Initially, the Plaintiff states that Giralde's first four shots were fired through the vehicle's windshield after the car moved forward the first time and the decedent put the vehicle into reverse the second time. (Doc. 77 at 67, Kennedy Deposition page 120) After a break in the deposition, the Plaintiff changed her testimony to state that Giralde's first four shots were fired through the windshield when the decedent put the vehicle into reverse the first time, before the vehicle ever moved forward. (Doc. 77 at 68) However, in the amended statement of facts, the Plaintiff states that Giralde's first four shots were fired after the decedent's vehicle reversed the first time and stopped. (Doc. 87 at 3)

It is undisputed that the Plaintiff could not see anything after the first shots were fired through the windshield because she slid down to the floor of the vehicle and put her head in the seat. (Doc. 87 at 14) The Plaintiff states that Giralde eventually approached the passenger's side window of the decedent's vehicle and fired additional shots at the

---

[4] This is consistent with the Plaintiff's deposition testimony in which the Plaintiff states that the decedent "went backwards, he went forward, and he went backwards again." (Doc. 87-1 at 17; Doc. 77 at 66)

[5] The Plaintiff admits that the vehicle moved forward in an attempt to make a three-point turn. (Doc. 87 at 14) By admitting that the vehicle moved forward, the Court assumes that the Plaintiff means to argue that the decedent's vehicle did not move forward toward Giralde.

5

decedent. (Doc. 87 at 4)  The decedent was killed by a bullet that entered through the passenger's side window. (Doc. 87 at 6)  The decedent's vehicle rolled forward and hit a pole. (Doc. 87 at 15)  The Plaintiff states that the decedent's vehicle could not have hit Giralde at the time Giralde fired the fatal shots through the passenger's side window, and Giralde could not see Ramirez and had no reason to believe that Ramirez was in danger. (Doc. 87 at 13, 15)

**IV.   Analysis**

The Plaintiff stipulated to the dismissal of her "Municipal Supervisory Liability" claim. (Doc. 79)  Each of the remaining claims will be addressed in turn.

**A. <u>Count I - 42 U.S.C. § 1983 –Wrongful Death or Excessive Force</u>**

1. <u>Excessive Force Claim</u>

The Plaintiff alleges a claim against the Defendants under 42 U.S.C. §1983 for "Wrongful Death or Excessive Force", but the substance of the Plaintiff's claim is for excessive force. (Doc. 29 at 8)  The first step in any action under 42 U.S.C. § 1983 is to identify the constitutional right allegedly violated. *Rosales v. City of Phoenix*, 202 F. Supp. 2d 1055, 1059–60 (D. Ariz. 1999).  The Plaintiff states that Giralde's excessive use of force violated the decedent's Fourth Amendment, Fifth Amendment, Thirteenth Amendment and Fourteenth Amendment rights. (Doc. 29 at 9)  For an excessive force claim, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and the relevant question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).  The Ninth Circuit Court of Appeals has held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury. *See Liston v. County of Riverside*, 120 F.3d 965, 976–77 (9th Cir. 1997) ("It is for the finder of fact to determine the reasonableness of the force used in this case, and that can be done only upon a fully developed record."); see also *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995).

The Court finds that there are genuine disputes of material fact that preclude summary judgment on Plaintiff's §1983 excessive force claim because, if a jury were to credit the Plaintiff's version of events, a jury could reasonably find that Giralde subjected the decedent to excessive force in firing the fatal shots through the passenger's side window. The Court finds that there is a genuine dispute as to whether (i) the decedent's vehicle was driving in a direction toward Giralde at the time the first round of shots was fired through the vehicle's windshield, (ii) Giralde reasonably feared for his safety and the safety of other officers at the time of the shooting, and (iii) the fatal shots fired through the passenger's side window of the vehicle constituted excessive force. The Court finds that the facts surrounding these specific issues are material to resolving this case on the merits. Because there is a genuine dispute of material fact as to the amount of force used and the reasonableness of that force, the Motion will be denied as to the Plaintiff's §1983 excessive force claim.

2. Qualified Immunity

The Defendants argue that they are entitled to summary judgment on Count 1 on the basis of qualified immunity. (Doc. 76 at 9–10) "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In determining whether an officer is entitled to qualified immunity, the Court must consider (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citing *Pearson*, 555

U.S. at 231).

To find a clearly established right, the court must consider the right at issue in a particularized sense, rather than "as a broad general proposition." *Cruz v. City of Tucson*, 2015 WL 11111305, at 3 (D. Ariz. July 14, 2015) (citing *Dunn v. Castro*, 621 F.3d 1196, 1200–01 (9th Cir. 2010)). This is because "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Cruz v. City of Tucson*, 2015 WL 11111305 at 3. Once a qualified-immunity defense is raised, the plaintiff bears the burden of proving the violation of a constitutional right and that the right was clearly established. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). It is well settled that the decedent had an established Fourth Amendment right against the use of unnecessary excessive force by a police officer. Accordingly, the Court shifts its analysis to whether the decedent's Fourth Amendment rights were violated.

Excessive force claims are governed by an "objective reasonableness standard," which requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 388. Courts must judge reasonableness "from the perspective of a reasonable officer on the scene, and consider several factors when evaluating the strength of the government's interest in the force used, such as: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. The most important factor is whether the suspect posed an immediate threat to the safety of the officers or others. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). Courts still must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

In applying the *Graham* factors, the Court finds that there are genuine disputes as

to the material facts governing whether the decedent posed an immediate threat to the safety of Giralde and Ramirez at the time each round of shots was fired. Taking the facts in the light most favorable to the Plaintiff, there is a genuine dispute as to whether the decedent's vehicle was moving towards Giralde at the time Giralde's first shots were fired through the windshield. Separately, in his deposition, Giralde stated that the decedent's vehicle could not hit him at the time the fatal shots were fired through the passenger's side window. If a jury concludes that the vehicle was not moving forward towards Giralde at the time of the shooting or that the vehicle did not pose an immediate danger to Giralde's safety, then a reasonable jury could find that the decedent did not pose an immediate threat to Giralde or Ramirez and that Giralde's use of deadly force was not objectively reasonable. Therefore, for the purpose of resolving the Motion, the Court declines to grant the Defendants summary judgement on Count 1 on the basis of qualified immunity.

### B. Count II - 42 U.S.C. § 1983 – Survival Action

Under Arizona law, a survival action is a personal injury action that survives to permit a decedent's estate to recover damages that would have been personally awarded to the decedent had he survived. Ariz. Rev. Stat. § 14–3110. The Plaintiff asserts her survival action on the basis of excessive force. (Doc. 29 at 10) For the same reasons that the Court finds that summary judgment is inappropriate on the Plaintiff's excessive force claim, the Court finds that summary judgment cannot be granted on the Plaintiff's survival action claim.

### C. Count III – Deprivation of Right to Familial Relationship

In order to establish a claim under 42 U.S.C. § 1983 for deprivation of a familial relationship, the Plaintiff must prove that the Defendants' use of force shocks the conscience. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014) (citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). This would require the Plaintiff to establish that Giralde acted "to cause harm unrelated to the legitimate object of arrest." *Porter*, 546 F.3d at 1139. Even viewing the facts in a light most favorable to the Plaintiff, the Court finds this standard has not been met. The Plaintiff does not plead any

facts stating that Giralde's behavior shocks the conscience, and there is no indication in the record that Giralde had any improper or ulterior motives when he shot the decedent. Thus, the Court finds that summary judgment is appropriate on the Plaintiff's 42 U.S.C. § 1983 claim for deprivation of a familial relationship.

### D. Count V – Negligence

To succeed on a negligence claim, a plaintiff must show "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1045 (D. Ariz. 2017) (citing *Gipson v. Kasey*, 150 P.3d 228, 230 (2007)). "The first element, whether a duty exists, is a matter of law for the court to decide. The other elements, including breach and causation, are factual issues usually decided by the jury." *Lewis*, 259 F. Supp. 3d at 1045.

The Defendants argue that the Plaintiff's negligence claim must fail because Giralde intentionally shot the decedent, and the Plaintiff cannot establish a negligence claim based on an intentional act. (Doc. 76 at 12–13) The Plaintiff fails to identify the specific act or acts performed by Giralde that were negligent. The Plaintiff also fails to plead that the Defendants owed a duty to conform their conduct to a certain standard of care or that the Defendants breached any such duty. (Doc. 29 at 13–14) However, the factual issues identified herein preclude an award of summary judgment on the Plaintiff's negligence claim. Specifically, in taking the facts in the light most favorable to the Plaintiff, a reasonable jury could find that Giralde was negligent in either firing the first round of shots through the vehicle's windshield or firing the second round of shots through the passenger's side window. Accordingly, the Court finds that summary judgment is inappropriate on Count 5.

### E. Count VI – Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress requires that the emotional distress inflicted must be manifested as a physical injury. *Leon v. Arizona*, 2012 WL

5936689, at 4 (D. Ariz. Nov. 26, 2012) (citing *Rowland v. Union Hills Country Club*, 757 P.2d 105, 108 (App. 1988)). Furthermore, a plaintiff must have been in the zone of danger so that the negligent defendant created an unreasonable risk of bodily harm to her. *Rowland*, 757 P.2d at 108 (quoting *Keck v. Jackson*, 593 P.2d 668 (1979)). As supporting evidence for her emotional distress claim, the Plaintiff provides a declaration stating that she suffers from severe emotional distress in the form of anxiety, nightmares and crying spells. (Doc. 87-14 at 2) However, the Plaintiff fails to provide any evidence that her emotional distress manifested itself in the form of a requisite physical injury. The Defendants argue that the Plaintiff's claim must fail because Giralde shot the decedent intentionally, not negligently. (Doc. 76 at 12–13) The Defendants' argument is misguided, as the Plaintiff's claim for negligent infliction of emotional distress focuses on Giralde's actions causing harm to the Plaintiff, and not Giralde's intentional shooting of the decedent. However, the Court finds that the record is devoid of any information demonstrating that the Plaintiff incurred the requisite physical injury. *Washington v. City of N. Las Vegas*, 161 F. App'x 637, 640 (9th Cir. 2005) (stating that a claim for negligent infliction of emotional distress requires a showing that a defendant's negligence resulted in physical injury or illness). Accordingly, summary judgment is appropriate on Count 6.

## F. Count VII – Intentional Infliction of Emotional Distress

To succeed on an intentional infliction of emotional distress claim, a plaintiff must prove that a "defendant's acts are so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1018 (D. Ariz. 2012) (citing *Patton v. First Fed. Sav. and Loan Ass'n of Phoenix*, 578 P.2d 152, 155 (1978)). The tort of intentional infliction of emotional distress requires that (i) the conduct by the defendant must be "extreme" and "outrageous"; (ii) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and (iii) severe emotional distress

must indeed occur as a result of defendant's conduct. *Dougall v. City of Tucson*, 2017 WL 1210340, at 7 (D. Ariz. Mar. 31, 2017) (citing *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005)). As supporting evidence for her emotional distress claims, the Plaintiff provides a declaration stating that she suffers from severe emotional distress in the form of anxiety, nightmares and crying spells. (Doc. 87-14 at 2) The Court finds that there are genuine disputes as to the facts surrounding whether the decedent's vehicle was moving towards Giralde at the time the first round of shots were fired through the vehicle's windshield and whether or not the deadly force used by Giralde was justified given his beliefs about whether he or Ramirez were in danger at the time he fired the shots through the passenger's side window. In taking the facts in the light most favorable to the Plaintiff, the Court finds that a reasonable jury could find that Giralde's conduct when shooting through the passenger's side window was extreme and outrageous. Thus, the disputed facts addressing the Defendants' liability for intentional infliction of emotional distress are a question for a jury to resolve. Accordingly, the Court finds that summary judgment is inappropriate on Count 7.

### G. Count VIII – Battery/Assault

An actor is subject to liability to another for battery if the actor intentionally engages in an act that results in harmful or offensive contact with the person of another." *Hulstedt*, 884 F. Supp. 2d at 1016 (citing *Duncan v. Scottsdale Medical Imaging, Ltd.*, 205 Ariz. 306, 309 (2003)). Police officers in Arizona are protected by the state justification statutes, which provide that officers are not subject to civil liability for "engaging in conduct otherwise justified pursuant to the provisions of this chapter." A.R.S. § 13–413. Under the statutes, an officer cannot be liable for using deadly force when the officer reasonably believes "that the person is likely to endanger human life or inflict serious bodily injury to another unless apprehended without delay." A.R.S. § 13–410(C)(2)(c). As discussed, the Court finds that there are genuine disputes as to the facts surrounding whether the decedent's vehicle was moving towards Giralde at the time the first round of shots were fired through the vehicle's windshield. There is a more distinct

issue of fact regarding whether or not the deadly force used by Giralde was justified given his beliefs about whether he or Ramirez were in danger at the time Giralde fired his weapon through the passenger's side window. Therefore, the Court finds that summary judgement is inappropriate on Count 8.

### H. Punitive Damages

In order for a plaintiff to recover punitive damages, the plaintiff must establish that a defendant acted with an "evil mind," which is a state of mind characterized by an intent to injure or a conscious disregard of an "unjustifiable substantial risk of significant harm" to others. *Matthews v. Greyhound Lines, Inc.*, 882 F. Supp. 146, 149 (D. Ariz. 1995); *Lewis*, 259 F. Supp. 3d at 1047. A plaintiff must prove this evil mind by clear and convincing evidence, although circumstantial evidence may be used to meet this burden. *Matthews*, 882 F. Supp. at 149. Because the Court finds that summary judgement is inappropriate on the only remaining claim that requests an award of punitive damages (Count 2), the Court declines to award summary judgment on the availability of punitive damages at this time.

Accordingly,

1. **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 76) is granted in part as to Counts 3 and 6; and

2. **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 76) is denied in part as to Counts 1, 2, 5, 7, and 8.

Dated this 22nd day of July, 2019.

Honorable Steven P. Logan
United States District Judge